## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CHARLES E. STUBY and | ) |
| LUKAS J. BERKEY, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) CIVIL ACTION NO. 3:12-47 |
| v. | ) |
| | ) JUDGE KIM R. GIBSON |
| BEDFORD COUNTY and | ) |
| CHARWIN REICHELDERFER, | ) |
| *in his individual and official capacities,* | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER OF COURT

**GIBSON, J.**

### I.    SYNOPSIS

Pending before the Court is Defendants' Motion for Summary Judgment (Doc. No. 20),

filed pursuant to Federal Rule of Civil Procedure 56. Plaintiffs oppose the motion. (*See* Doc.

No. 24). For the reasons stated below, Defendants' motion will be **DENIED**.

### II.    JURISDICTION AND VENUE

The Court has jurisdiction pursuant to 42 U.S.C. § 1983 and 28 U.S.C §§ 1331 and 1343.

Venue is proper pursuant to 28 U.S.C. 1391(b)(2) because a substantial portion of the events or

omissions giving rise to the claims occurred in the Western District of Pennsylvania.

### III.    BACKGROUND

This case stems from Plaintiffs' termination from employment as deputy sheriffs. (*See*

*generally* Doc. No. 1). According to the Plaintiffs, Defendant Reichelderfer fired them after

Plaintiff Stuby, supported by Plaintiff Berkey, ran in an election for Bedford County Sheriff

against Defendant Reichelderfer, the incumbent Sheriff. (Doc. No. 1 at ¶¶ 25-37). Plaintiff

1

Stuby alleges that Defendants fired him because of his political affiliation and because of his decision to run for political office (Doc. No. 1 at ¶¶ 25-31), and Plaintiff Berkey alleges that Defendants fired him because of his political affiliation (Doc. No. 1 at ¶¶ 32-37). (Doc. No. 1 at ¶¶ 25-37). Plaintiffs assert a cause of action pursuant to 42 U.S.C. § 1983.

Plaintiffs filed a complaint (Doc. No. 1) on February 24, 2012, and Defendants filed an answer (Doc. No. 8) on April 9, 2012. Thereafter, the parties conducted discovery. On December 7, 2012, Defendants filed a motion for summary judgment (Doc. No. 20), a brief in support (Doc. No. 21), a concise statement of material facts[1] (Doc. No. 22), and an appendix of supporting exhibits (Doc. No. 23). On January 3, 2013, Plaintiffs filed a brief in opposition (Doc. No. 24) to Defendants' motion for summary judgment, a response to Defendants' concise statement of material facts (Doc. No. 25), Plaintiffs' concise statement of material facts (Doc. No. 26), and an appendix of supporting exhibits (Doc. No. 27). On January 16, 2013, Defendants filed a reply brief (Doc. No. 28)[2] and a response (Doc. No. 29) to Plaintiffs' concise statement of material facts. With leave from the Court (*see* Order of Court, Doc. No. 34), Plaintiffs filed a supplemental appendix (Doc. No. 35) on January 25, 2013. This matter is now ripe for adjudication.

---

[1] Defendants—the moving party—filed a terse, seven-paragraph concise statement of material facts ("Defendants' CSMF") in support of their motion for summary judgment. (Doc. No. 22). Plaintiffs admit that all seven paragraphs of Defendants' CSMF are undisputed. (Doc. No. 25 at ¶ 1). However, as Plaintiffs point out, Defendants' lengthy motion for summary judgment (Doc. No. 20) sets forth 131 paragraphs, most of which allege additional facts not contained in Defendants' CSMF. Plaintiffs suggest that the Court (1) consider only those facts alleged in the Defendants' meager CSMF and/or (2) deny Defendants' motion for summary judgment on the basis that Defendants failed to file a complete CSMF as required by Local Rule 56(B)(1). (*See* Doc. No. 25 at n.1). The Court agrees that Defendants' CSMF fails to provide the complete factual background upon which Defendants rely in their motion and brief. Additionally, while the Court appreciates concise and to-the-point documents, Defendants' CSMF fails to adequately present the facts upon which the Court must rely to decide the instant dispute. Nevertheless, while Defendants' failure to comply with the local rules alone could be a basis for denying their motion for summary judgment, the Court will decide this matter on the merits.

[2] Plaintiffs filed a motion to strike (Doc. No. 30) Defendants' reply brief on January 17, 2013, and Defendant filed a reply in opposition (Doc. No. 31) to Plaintiffs' motion to strike. The Court denied Plaintiffs' motion to strike. (Doc. No. 32).

The following facts are not in dispute. Plaintiffs, Charles Stuby ("Stuby") and Lukas Berkey ("Berkey"), worked as deputy sheriffs for the Bedford County Sheriff's Office. (Doc. No. 1 at ¶¶ 7-8; Doc. No. 8 at ¶¶ 7-8). Defendant Charwin Reichelderfer ("Reichelderfer"), a Republican, became Bedford County Sheriff in January 2008. (Doc. No. 1 at ¶ 9; Doc. No. 8 at ¶ 9). As deputy sheriffs for Bedford County, Plaintiffs reported to the Sheriff, Defendant Reichelderfer. (Doc. No. 1 at ¶ 9; Doc. No. 8 at ¶ 9).

In 2011, Plaintiff Stuby ran as a Democrat in the election for Bedford County Sheriff against Defendant Reichelderfer, the incumbent Sheriff. (Doc. No. 1 at ¶¶ 14-17; Doc. No. 8 at ¶¶ 14-17). Plaintiff Berkey, also a Democrat, supported Plaintiff Stuby in his campaign for Sheriff. (Doc. No. 1 at ¶¶ 17-18; Doc. No. 8 at ¶¶ 17-18). Plaintiff Berkey's wife served as the campaign treasurer for Plaintiff Stuby. (Doc. No. 1 at ¶ 19; Doc. No. 8 at ¶ 19). Defendant Reichelderfer was aware that Plaintiff Stuby was running for Sheriff and was aware that Plaintiff Berkey supported Plaintiff Stuby's campaign. (Doc. No. 1 at ¶¶ 17-18; Doc. No. 8 at ¶¶ 17-18).

On November 8, 2011, Defendant Reichelderfer was reelected as Bedford County Sheriff. (Doc. No. 1 at ¶ 21; Doc. No. 8 at ¶ 21). Two days later, on November 10, 2011, Defendant Reichelderfer fired both Plaintiffs. (Doc. No. 1 at ¶¶ 22-24; Doc. No. 8 at ¶¶ 22-24). Thereafter, Plaintiffs initiated this action by filing a complaint. (Doc. No. 1).

## IV.   LEGAL STANDARDS

### A.   Summary Judgment

"Summary judgment is appropriate only where . . . there is no genuine issue as to any material fact . . . and the moving party is entitled to judgment as a matter of law." *Melrose, Inc. v. Pittsburgh*, 613 F.3d 380, 387 (3d Cir. 2010) (quoting *Ruehl v. Viacom, Inc.*, 500 F.3d 375, 380 n.6 (3d Cir. 2007)); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed. R. Civ.

3

P. 56(a).[3] Issues of fact are genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also McGreevy v. Stroup*, 413 F.3d 359, 363 (3d Cir. 2005). Material facts are those that will affect the outcome of the trial under governing law. *Anderson*, 477 U.S. at 248. The Court's role is "not to weigh the evidence or to determine the truth of the matter, but only to determine whether the evidence of record is such that a reasonable jury could return a verdict for the nonmoving party." *Am. Eagle Outfitters v. Lyle & Scott Ltd.*, 584 F.3d 575, 581 (3d Cir. 2009). "In making this determination, 'a court must view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor.'" *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 278 (3d Cir. 2000) (*quoting Armbruster v. Unisys Corp.*, 32 F.3d 768, 777 (3d Cir. 1994).

The moving party bears the initial responsibility of stating the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. If the moving party meets this burden, the party opposing summary judgment "may not rest upon the mere allegations or denials" of the pleading, but "must set forth specific facts showing that there is a genuine issue for trial." *Saldana v. Kmart Corp.*, 260 F.3d 228, 232 (3d Cir. 2001) (*quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 n.11 (1986)). "For an issue to be genuine, the nonmovant needs to supply more than a scintilla of evidence in support of its position—there must be sufficient evidence (not mere allegations) for a reasonable jury to find for the nonmovant." *Coolspring Stone Supply v. Am. States Life Ins. Co.*, 10 F.3d 144, 148 (3d Cir. 1993).

---

[3] Rule 56 was revised in 2010. The standard previously set forth in subsection (c) is now codified as subsection (a). The language of this subsection is unchanged, except for "one word—genuine 'issue' bec[ame] genuine 'dispute.'" Fed. R. Civ. P. 56 advisory committee's note, 2010 amendment.

4

## B.     42 U.S.C. § 1983

A plaintiff may assert a cause of action pursuant to 42 U.S.C. § 1983 for certain violations of his constitutional rights. 42 U.S.C. § 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

Although the statute "'is not itself a source of substantive rights,' . . . [it] provides 'a method for vindicating federal rights elsewhere conferred.'" *Graham v. Connor*, 490 U.S. 386, 393-94 (1989) (*quoting Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)).  To state a claim for relief under § 1983, a plaintiff must allege (1) that some person has deprived the plaintiff of a right secured by the Constitution or laws of the United States and (2) that the person who deprived the plaintiff of that right acted under the color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Gomez v. Toledo*, 446 U.S. 635, 640 (1980).  Plaintiffs' Complaint alleges that Defendants violated Plaintiffs' First and Fourteenth Amendment rights, setting forth claims pursuant to § 1983 for discrimination based on political affiliation and speech. (*See* Doc. No. 1).

### C.     Discrimination Based on Political Affiliation

"[P]ublic agencies may not hire, transfer, promote, or discharge public employees based on their political affiliations unless their work requires political allegiance." *Robertson v. Flore*, 62 F.3d 596, 599 (3d Cir. 1995) (noting this principle flows from the Constitution's prohibition against discharging public employees based on speech regarding issues of public concern).  In a trilogy of cases, the Supreme Court formulated principles for deciding cases involving claims of discrimination based on political association: *Elrod v. Burns*, 427 U.S. 347 (1976); *Branti v. Finkel*, 445 U.S. 507 (1980); and *Rutan v. Republican Party of Ill.*, 497 U.S. 62 (1990).

5

Based on these precedents, the Third Circuit adopted a three-part test to evaluate a claim of employment discrimination based on political association in violation of the First Amendment. *See Goodman v. Pa. Tpk. Comm'n*, 293 F. 3d 655, 663 (3d Cir. 2002); *Galli v. N.J. Meadowlands Comm'n*, 490 F. 3d 265, 270-71 (3d Cir. 2007). To establish a prima facie case, a plaintiff must show (1) that he worked at a public agency in a position that does not require political affiliation, (2) that he maintained an affiliation with a political party, and (3) that this affiliation was a substantial or motivating factor in the government's adverse employment decision. *Galli*, 490 F. 3d at 271; *see also*, *Robertson*, 62 F.3d at 599; *Goodman*, 293 F.3d at 663. Implicit in the final prong of the test "'is a requirement that the plaintiff produce sufficient evidence to show [that] the defendant knew of [the] plaintiff's political persuasion,' which requires proof of both knowledge and causation." *Galli*, 490 F. 3d at 275 (*quoting Goodman*, 293 F.3d at 664) (alterations in original).

If a plaintiff is able to show that his political association is a substantial or motivating factor in the adverse employment decision, the burden shifts to the employer to show "by a preponderance of the evidence that it would have reached the same decision . . . even in the absence of the protected conduct." *D'Aurizio v. Palisades Park*, 963 F. Supp. 378, 384 (D.N.J. 1997) (*quoting Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)); *see also*, *Robertson*, 62 F.3d at 599; *Galli*, 490 F. 3d at 271; *Goodman*, 293 F.3d at 664.

## V.    DISCUSSION

Count I of Plaintiffs' Complaint alleges that Defendants fired Plaintiff Stuby (1) because of his political affiliation, in violation of the First and Fourteenth Amendments to the United States Constitution; and (2) because of his speech as a citizen on matters of public concern and his decision to run for office, in violation of the First and Fourteenth Amendments to the United

6

States Constitution. (Doc. No. 1 at ¶¶ 25-31). Similarly, Count II of Plaintiffs' Complaint alleges that Defendants fired Plaintiff Berkey because of his political affiliation, in violation of the First and Fourteenth Amendments to the United States Constitution. (Doc. No. 1 at ¶¶ 32-37). Both Counts allege that Defendants violated Plaintiffs' constitutional rights under color of state law and that the claims are thus actionable pursuant to 42 U.S.C. § 1983. (Doc. No. 1 at ¶¶ 25-37).

Defendants contend that Plaintiffs "have not established any Constitutional claims against either of the Defendants as their terminations were based upon their misconduct rather than their political associations." (Doc. No. 21 at 2). In support of their motion for summary judgment, Defendants argue (1) that Plaintiffs have failed to establish a § 1983 violation under the First and Fourteenth Amendments (Doc. No. 21 at 4-10); (2) that Plaintiffs have failed to establish a § 1983 violation based on a municipal policy, procedure, or practice against Defendant Bedford County (Doc. No. 21 at 10-14); and (3) that Defendant Reichelderfer is entitled to qualified immunity as a public official (Doc. No. 21 at 14-15).

### A. Plaintiffs' § 1983 Claims

Defendants contend that Plaintiffs have failed to establish a § 1983 violation under the First or Fourteenth Amendments. (Doc. No. 21 at 4). Defendants argue that the evidence[4] shows Defendants based their decision to fire the Plaintiffs on "the misconduct and violations of office policy as well as just the lack of rofessionalism [sic] by the Plaintiffs while in uniform" rather than on Plaintiffs exercising their constitutional rights. (Doc. No. 28 at 4-5; Doc. No. 21 at 10). Defendants further argue that, even if Plaintiffs can establish a prima facie case for their claims,

---

[4] In their reply brief (Doc. No. 28), Defendants confusingly explain: "The 'competent evidence' is lacking as it more nebulous if anything as some of it is based upon Plaintiffs' own statements made to defeat Defendants' summary judgment. The competent evidence is the overwhelming testimony by various person who notified Reichelderfer of a problem with two of his deputies and the documentation to evidence those complaints." (Doc. 28 at 6) (citations to the record omitted) (all errors in original).

7

Defendants have nevertheless shown by a preponderance of the evidence that they would have taken the same employment action in the absence of the protected activity. (Doc. No. 28 at 4-6).

Plaintiffs' Complaint sets forth two separate types of claims: (1) both Plaintiffs—Stuby and Berkey—allege a political affiliation claim (Doc. No. 1 at ¶¶ 26, 33); and (2) Plaintiff Stuby alleges a free speech claim (Doc. No. 1 at ¶ 27). The Court will separately address each claim.[5]

### 1. Plaintiffs' Political Affiliation Claims

In their Complaint, both Plaintiffs raised identical political affiliation claims. (*See* Doc. No. 1 at ¶¶ 25-37). Plaintiffs allege that Defendants terminated them because of their political affiliation. (Doc. No. 1 at ¶¶ 26, 33). Defendants contend that Plaintiffs have failed to make out a political affiliation claim and, further, that Defendants have established the terminations were instead based on violations of Sheriff's Office and county policies and procedures. (Doc. No. 21 at 4-10).

The law governing political discrimination claims is well settled—"conditioning hiring decisions on political belief and association plainly constitutes an unconstitutional condition, unless the government has a vital interest in doing so." *Rutan v. Republican Party of Ill.*, 497 U.S. 62, 78 (1990) (*citing Elrod v. Burns*, 427 U.S. 347 (1976) and *Branti v. Finkel*, 445 U.S.

---

[5] Defendants' brief in support (Doc. No. 21) of their motion for summary judgment conflates the Plaintiffs' political affiliation and speech claims. Defendants seemingly acknowledge their confusion about the Plaintiffs' claims and the applicable case law and tests. Attempting to explain the applicable case law, Defendants write, "It appears that the *Elrod* line of cases must be considered rather than the *Pickering* where political affiliation is not an issue and the speech is alleged to have impaired the working relationship . . ." (Doc. No. 21 at 8). Yet, Defendants immediately note, "If the *Pickering* balancing test controls then the record is clear that the actions and behavior of [Plaintiffs] . . . created a problem in which the employer's interest in having an effective and efficient workplace were outweighed by the speech interest of Stuby." (Doc. No. 21 at 9). Apparently unable to decide which test applies to which claim, Defendants conclude, "If there is a dismissal, a balancing test is required to determine if there was discrimination based upon political speech or political affiliation. The only way Plaintiffs can avoid a summary judgment . . . is to point out evidence in the record which . . . would permit a rational fact finder to conclude that their conduct was constitutionally protected and that the protected conduct was a substantial factor in the dismissals." (Doc. No. 21 at 9). Despite Defendants' apparent inability to identify the appropriate judicial precedents, Defendants have nonetheless pointed to the relevant inquiry that is germane to the instant dispute: whether Plaintiffs have produced sufficient evidence showing their constitutionally protected activity was a substantial or motivating factor in the Defendants' adverse employment decision, and, if so, whether Defendants can show that they would have made the adverse employment decision even if Plaintiffs had not engaged in the constitutionally protected activity.

8

507 (1980)).[6] Political discrimination is presumptively prohibited as an infringement on First Amendment interests. *See Elrod*, 427 U.S. at 360; *Perry v. Sindermann*, 408 U.S. 593 (1972); *Keyishian v. Bd. of Regents*, 385 U.S. 589 (1967). However, the prohibition against political discrimination is not absolute. The Supreme Court has recognized certain narrow exceptions to the First Amendment's prohibition. *See, e.g., Elrod*, 427 U.S. at 360-63 ("[I]f conditioning the retention of public employment on the employee's support of the in-party is to survive constitutional challenge, it must further some vital government end by a means that is least restrictive of freedom of belief and association in achieving that end, and the benefit gained must outweigh the loss of constitutionally protected rights."); *see also Branti*, 445 U.S. at 507.

Nevertheless, "mere political association is an inadequate basis for imputing disposition to ill-willed conduct." *Elrod*, 427 U.S. at 365 (citing *Keyishian*, 385 U.S. at 606-08; *Elfbrandt v. Russell*, 384 U.S. 11, 19 (1966); *Wieman v. Updegraff*, 344 U.S.183, 190-91 (1952)). Likewise, "[a] citizen's right not to support a candidate is just as relevant for First Amendment purposes as her right to support one." *Galli v. N.J. Meadowlands Comm'n*, 490 F.3d 265, 273 (3d Cir. 2007); *Stephens v. Kerrigan*, 122 F.3d 171, 176 (3d Cir. 1997); *Bennis v. Gable,* 823 F.2d 723, 731 (3d Cir. 1987).

The issue before the Court is whether Plaintiffs have produced sufficient evidence to support their claim that Defendants fired them on impermissible grounds. Summary judgment is proper when the moving party has established that there is no genuine dispute of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). To prevail on a motion for summary judgment, the non-moving party must show specific facts such

---

[6] Justice Brennan, writing for the Court, opined, "To the victor belong only those spoils that may be constitutionally obtained," and concluded that "the First Amendment's proscription of patronage dismissals . . . extends to promotion, transfer, recall, or hiring decisions involving public employment positions for which party affiliation is not an appropriate requirement." *Rutan v. Republican Party of Ill.*, 497 U.S. 62, 64, 68 (1990).

9

that a reasonable jury could find in that party's favor, thereby establishing a genuine issue of fact for trial. Fed. R. Civ. P. 56(e). "While the evidence that the non-moving party presents may be either direct or circumstantial, and need not be as great as a preponderance, the evidence must be more than a scintilla." *Galli v. N. J. Meadowlands Comm'n*, 490 F.3d 265, 270 (3d Cir. 2007) (*quoting Hugh v. Butler Cnty. Family YMCA*, 418 F.3d 265, 267 (3d Cir. 2005)).

The Third Circuit has derived a three-part test to establish a claim of discrimination based on political affiliation. To establish a prima facie case, Plaintiffs must show (1) that they were employed at a public agency in a position that does not require political affiliation, (2) that they maintained an affiliation with a political party, and (3) that this affiliation was a substantial or motivating factor in the government's employment decision. *See Robertson v. Fiore*, 62 F.3d 596 (3d Cir. 1995); *Goodman v. Pa. Tpk. Comm'n*, 293 F.3d 655, 663 (3d Cir. 2002); *Galli v. New Jersey Meadowlands Comm'n*, 490 F.3d 265, 271 (3d Cir. 2007). Once Plaintiffs have made this showing, Defendants may "avoid a finding of liability by proving by a preponderance of the evidence that the same employment action would have been taken even in the absence of the protected activity." *Galli*, 490 F.3d at 271; *Stephens v. Kerrigan*, 122 F.3d 171, 176 (3d Cir. 1997); *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977).

The first two prongs of the applicable test are not in dispute. At the time of their dismissal, Plaintiffs worked as deputy sheriffs with the Bedford County Sheriff's Office, a position with a public agency that does not require any political affiliation. *See Burns v. Cnty. of Cabria, Pa.*, 971 F.3d 1015, 1022 (3d Cir. 1992); *Morgan v Rossi*, No. 96-1536, 1998 WL 175604, at *11-12 (E.D. Pa. April 15, 1998). Likewise, Plaintiffs were engaged in constitutionally protected conduct—namely, they were members of a political party and were campaigning in an election against the incumbent sheriff. *See Burns*, 971 F.3d at 1022 (holding

10

that campaigning by deputy sheriffs against an incumbent sheriff qualifies as a protected activity under the First Amendment); *see also Morgan*, 1998 WL 175604, at \*3. Defendant Reichelderfer concedes that he was aware (1) that Plaintiffs identified themselves as Democrats (Doc. No. 26 at ¶ 27, Doc. No. 29 at ¶ 27), (2) that Plaintiff Stuby was running against him in the election for sheriff (Doc. No. 26 at ¶ 22, Doc. No. 29 at ¶ 22), and (3) that Plaintiff Berkey supported and actively campaigned for Plaintiff Stuby (Doc. No. 26 at ¶¶ 29-31, Doc. No. 29 at ¶¶ 29-31). Furthermore, Defendants admit that Plaintiffs suffered from an adverse employment decision. (Doc. No. 22 at ¶ 7; Doc. No. 26 at ¶ 37).

However, Defendants contend that Reichelderfer terminated Plaintiffs from employment because of violations of Sheriff's Office and county policies and procedures, and not because of their political affiliation. (*See* Doc. No. 21 at 6) ("The terminations were a calumniation [sic] of so much misconduct by both during work hours."). Defendants assert that Plaintiffs cannot meet their burden of showing that any constitutionally protected conduct was a motivating or substantial factor in Plaintiffs' termination from employment. (Doc. No. 21 at 6).

On the other hand, Plaintiffs argue that, based on the evidence, a reasonable jury could find that Plaintiffs' political affiliation was a substantial or motivating factor in Defendant Reichelderfer's decision to fire them. (Doc. No. 24 at 4). Plaintiffs assert numerous arguments, supported by evidence in the record, to support their argument that their political affiliation was a substantial or motivating factor in the adverse employment action.

For example, Plaintiffs contend that the causation element of the above-referenced test is established through the "unusually suggestive proximity between the protected activity and adverse action." (Doc. No. 24 at 5). The Third Circuit has recognized "that a plaintiff may rely on a 'broad array of evidence' to demonstrate a causal link between his protected activity and the

11

adverse action taken against him" including "an 'unusually suggestive' proximity in time between the protected activity and the adverse action." *Marra v. Philadelphia Hous. Auth.*, 497 F.3d 286, 302 (3d Cir. 2007) (*quoting Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 284 (3d Cir. 2000); *Robinson v. City of Pittsburgh*, 120 F.3d 1286, 1302 (3d Cir.1997)); *see also Langford v. City of Atl. City*, 235 F.3d 845, 851 (3d Cir. 2000) (complaint alleging defendants took retaliatory action against plaintiffs at their first opportunity following an election survives a motion to dismiss); *Jalil v. Avdel Corp.*, 873 F.2d 701, 708 (3d Cir. 1989). Here, after Defendant Reichelderfer won reelection, defeating Plaintiff Stuby, Defendant Reichelderfer fired both Plaintiffs on the next workday following the election. (Doc. No. 26 at ¶¶ 1-2; Doc. No. 29 at ¶¶ 1-2). Defendant Reichelderfer explained that he did not fire Plaintiffs until after the election because he did not want to "start a controversy and see it in the newspaper" during the election. (Doc. No. 23-1 at 7). The proximity in time between the election—during which Plaintiffs campaigned against Defendant Reichelderfer—and Defendants' firing of Plaintiffs is unusually suggestive.

Similarly, Plaintiffs (1) contend that Defendants changed their reasons for firing Plaintiffs, which is evidence of pretext (Doc. No. 24 at 6-8); (2) challenge the core facts regarding Defendants' proffered reasons for terminating Plaintiffs (Doc. No. 24 at 8-10); (3) contend that the fact that several months passed between many of the alleged incidents and Plaintiffs' discharge casts doubt on the validity of Defendants' proffered reasons (Doc. No. 24 at 10-11); and (4) assert that Defendant Reichelderfer gave contradictory testimony about Chief Deputy Troy Nelson's involvement in the termination decisions, thus calling Defendant Reichelderfer's credibility into doubt (Doc. No. 24 at 11).

According to the Defendants, Plaintiffs' terminations were the result of numerous infractions of Sheriff's Office and county policies and procedures: Plaintiffs campaigned while on duty (Doc. No. 20 at ¶¶ 17, 77-80; Doc. No. 23-1 at 19); Plaintiff Stuby wore department issued clothing while off-duty at a public event (Doc. No. 20 at ¶ 19; Doc. No. 23-10 at 20, 21); Plaintiff Stuby gave legal advice to a prisoner (Doc. No. 20 at ¶¶ 26-27; Doc. No. 23-1 at 26-28); Plaintiff Stuby threatened to shoot another deputy (Doc. No. 20 at ¶ 30; Doc. No. 23-1 at 32-33); Plaintiff Stuby left a security booth unattended (Doc. No. 20 at ¶ 31; Doc. No. 23-1 at 34); Plaintiff Stuby left the door to the Sheriff's Office open (Doc. No. 20 at ¶ 39); Plaintiff Stuby smoked with prisoners (Doc. No. 20 at ¶ 35); Plaintiff Stuby, on one occasion, failed to wear his correct gun belt (Doc. No. 20 at ¶ 37); Plaintiff Berkey took a photograph of Plaintiff Stuby rescuing a dog and sent it to the local newspaper for publication without authorization from the Sheriff's Office (Doc. No. 20 at ¶ 13(b)); both Plaintiffs permitted prisoners to talk to family members while in custody (Doc. No. 20 at ¶ 13(a)); both Plaintiffs visited a local car dealership to test drive a car while on duty and in uniform (Doc. No. 20 at ¶ 13(c)). Plaintiffs either deny Defendants' allegations or assert that the alleged conduct does not violate office or county policy. (*See generally* Doc. No. 25; *see also* Doc. No. 24 at 7-11).

Having reviewed the evidence, the Court concludes that Plaintiffs have provided sufficient evidence to establish a dispute of material fact as to whether Defendants fired Plaintiffs because of their political affiliation and other First Amendment activities. *Galli v. New Jersey Meadowlands Comm'n*, 490 F.3d 265, 276-77 (3d Cir. 2007); *Goodman v. Pa. Tpk. Comm'n*, 293 F.3d 655 (3d Cir. 2002); *Stephens v. Kerrigan*, 122 F.3d 171 (3d Cir. 1997); *Robertson v. Fiore*, 62 F.3d 596 (3d Cir. 1995); *Bennis v. Gable*, 823 F.2d 723 (3d Cir. 1987). Plaintiffs and Defendants allege different reasons for the termination of the deputies. (*Compare* Doc. No. 21,

*with* Doc. No. 24). Defendants contend that Plaintiffs were not terminated based on their political affiliation, "but for the simple reason that they had been violating office policies as well as County standards in their behavior which culminated in creating issues of conflict within the Sheriff's office." (Doc. No. 21 at 9-10). Plaintiffs counter that "Defendants' proffered reasons for firing Plaintiffs are pretextual" and provide evidence supporting Plaintiffs' allegations that the terminations were the result of discrimination. (Doc. No. 24 at 4).

Because Plaintiffs' evidence contradicts Defendants' allegations that Plaintiffs violated county and office policies and procedures, and because Plaintiffs have offered evidence from which a reasonable jury could conclude that Plaintiffs' political affiliation was a substantial or motivating factor in their termination, Plaintiffs have established a prima facie claim for discrimination on the basis of political affiliation for the purpose of surviving summary judgment. *See Galli v. N. J. Meadowlands Comm'n*, 490 F.3d 265, 276 (3d Cir. 2007). Accordingly, Defendants' motion for summary judgment as to Plaintiffs' political affiliation claims should be denied. *See Montone v. City of Jersey City*, 709 F.3d 181, 191 (3d Cir. 2013) ("[A] plaintiff in an employment retaliation case may avoid summary judgment by offering evidence that discredits the reasons articulated by the defense for the adverse employment action.").

### 2. Plaintiff Stuby's Speech Claim

In addition to his political affiliation claim, Plaintiff Stuby alleges that Defendants fired him "because of his speech as a citizen on matters of public concern, and because of his decision to run for office." (Doc. No. 1 at ¶ 27). Defendants argue that Plaintiff Stuby has not established that his speech was a substantial or motivating factor in his termination, but instead that

Defendants fired Plaintiff Stuby because of "violations of the office's SOP and the county's handbook." (Doc. No. 21 at 8-10).

Public employees have a First Amendment right to speak as citizens on matters of public concern. *See Connick v. Myers*, 461 U.S. 138, 146 (1983); *Pickering v. Bd. of Educ.*, 391 U.S. 563, 571-72 (1968). "To state a First Amendment retaliation claim, a plaintiff must allege two things: (1) that the activity in question is protected by the First Amendment, and (2) that the protected activity was a substantial factor in the alleged retaliatory action." *Hill v. Borough of Kutztown*, 455 F.3d 225, 241 (3d Cir. 2006); *see also*, *Curinga v. City of Clairton*, 357 F.3d 305, 310 (3d Cir. 2004). "A public employee's statement is protected activity when (1) in making it, the employee spoke as a citizen, (2) the statement involved a matter of public concern, and (3) the government employer did not have 'an adequate justification for treating the employee differently from any other member of the general public' as a result of the statement he made." *Hill v. Borough of Kutztown*, 455 F.3d 225, 241-42 (3d Cir. 2006) (*quoting Garcetti v. Ceballos*, 547 U.S. 410 (2006)). Accordingly, under *Pickering*, Plaintiff Stuby "must demonstrate that his speech involved a matter of public concern, and that his interest in the speech outweighs any potential disruption of the work environment and decreased efficiency of the [sheriff's] office." *Curinga*, 357 F.3d at 312.

Defendants do not appear to deny that Plaintiff Stuby's speech was a matter of public concern. Instead, Defendants argue that the government's interest in providing efficient and effective services to the public outweighs Plaintiff Stuby's interest in speech. According to the Defendants,

> If the *Pickering* balancing test controls then the record is clear that the actions and behavior of Stuby as well as Berkey who were in close proximity to the supervisor for whom they criticized created a problem in which the employer's

interest in having an effective and efficient workplace were outweighed by the speech interest of Stuby.[7]

(Doc. No. 21 at 8-9). Despite this assertion, Defendants fail to point to any evidence in the record showing that the government's interest in providing efficient and effective services outweighed the speech interests of Plaintiff Stuby. Indeed, Defendants fail to articulate any intelligible explanation to support their contention that Plaintiff Stuby "cannot maintain a claims [sic] for such a constitutional right being violated." (Doc. No. 21 at 7).

Contrary to Defendants' blanket assertions, Plaintiff Stuby has demonstrated that his speech involved a matter of public concern and that his speech interests outweigh the interests of Defendants. Plaintiff Stuby decided to run for sheriff. As part of his campaign, Plaintiff Stuby, like Defendant Reichelderfer, made public statements and published position editorials in the local newspaper. (*See* Doc. 27-2 at 30-32). Defendants have failed to show that any of Plaintiff Stuby's public speech disrupted the daily activities of the Sheriff's Office and have failed to identify any interests of the Sheriff's Office that would tip the balance of the scales against the speech interests of Plaintiff Stuby.[8]

Accordingly, Defendants' motion for summary judgment as to Plaintiff Stuby's free speech claim should be denied.

---

[7] This confusing and inartfully worded sentence appears to admit that, under the *Pickering* test, Stuby's speech interest outweighed Defendants' interests: "the employer's interest . . . were [sic] outweighed by the speech interest of Stuby." (Doc. No. 21 at 9). Nevertheless, the Court will assume that Defendants intend to assert the opposite— that Defendants' interest in providing efficient and effective services to the public outweighed Stuby's speech interest.

[8] Defendants contend that, in a statement published in the local newspaper on November 2, 2011, Plaintiff Stuby discussed fiscal matters and incorrectly stated a particular budget figure. (Doc. No. 21 at 6). Plaintiff Stuby admits the figure was wrong, but contends the figure referred to a prior budget under Defendant Reichelderfer's predecessor, Sheriff Diehl, and that the information came directly from Sheriff Diehl. (Doc. No. 24 at 15-16). Defendants have failed to show how this error created a disruption of Defendants' effective and efficient workplace.

16

## B. Municipal Liability

Plaintiffs have asserted claims under 42 U.S.C. § 1983 against Defendant Bedford County for violation of Plaintiffs' First and Fourteen Amendment rights. (Doc. No. 1 at 3-6). Defendant Bedford County contends that Plaintiffs have failed to present any evidence of a § 1983 violation based on municipal policy, procedure, or practice. (Doc. No. 21 at 10-14).

Local governments and municipalities qualify as "persons" subject to liability under § 1983. *Monell v. Dept. of Soc. Servs.*, 436 U.S. 658, 690 (1978). However, "a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Id.* at 691. Instead, municipal liability attaches "where the decision-maker possesses final authority to establish municipal policy with respect to the action ordered." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986). A single unlawful act may establish official policy and thus incur liability under § 1983. *See Id.* at 483; *McGreevy v. Stroup*, 413 F.3d 359, 367-368 (3d Cir. 2005) ("*Pembaur* makes clear that an official with policymaking authority can create official policy, even by rendering a single decision."). An individual's conduct is considered official policy or practice sufficient to bind a municipality under § 1983 liability when:

> (1) the individual acted pursuant to a formal government policy or a standard operating procedure long accepted within the government entity, (2) the individual himself has final policy-making authority such that his conduct represents official policy, or (3) a final policy-maker renders the individual's conduct official for liability purposes by having delegated to him authority to act or speak for the government, or by ratifying the conduct or speech after it has occurred.

*Hill v. Borough of Kutztown*, 455 F.3d 225, 245 (3d Cir. 2006) (citing *Pembaur*, 475 U.S. at 478–84; *McGreevy*, 413 F.3d at 367; *LaVerdure v. Cnty. of Montgomery*, 324 F.3d 123, 125–26 (3d Cir. 2003)); *see also*, *Kocher v. Larksville Borough*, 926 F. Supp. 2d 579, 604 (M.D. Pa. 2013).

17

Here, Plaintiffs contend that the second scenario above is applicable because the conduct of the final policymaker himself—Defendant Reichelderfer—violated federal law, thus representing official policy of the municipality, Defendant Bedford County. (*See* Doc. No. 24 at 15-18). To determine whether an official has final policymaking authority and can thus bind the municipality by his conduct, "a court must determine (1) whether, as a matter of state law, the official is responsible for making policy *in the particular area* of municipal business in question, . . . and (2) whether the official's authority to make policy in that area is *final and unreviewable*." *Hill*, 455 F.3d at 245-46 (citations omitted) (emphasis in original); *see also Brennan v Norton*, 350 F.3d 399, 428 (3d Cir. 2003). "'The question of who is a policymaker is a question of state law,' to be addressed by a court, not a jury, in 'determin[ing] which official has final, unreviewable discretion to make a decision or take an action.'" *B.S. v. Somerset Cnty.*, 704 F.3d 250, 275 n.36 (3d Cir. 2013) (*quoting Andrews v. City of Phila.*, 895 F.2d 1469, 1481 (3d Cir. 1990)).

Defendants contend that Bedford County is entitled to summary judgment because (1) Plaintiffs are attempting to improperly hold Defendant Bedford County liable on a theory of vicarious liability, (2) Plaintiffs have not produced evidence that Defendant Bedford County had a policy or procedure that amounted to deliberate indifference to Plaintiffs' First Amendment rights, and (3) Plaintiffs "have not even argued that Bedford County had a policy which played an affirmative role in bringing about the harm." (Doc. No. 21 at 13). However, Defendants' arguments misconstrue Plaintiffs' allegations and misstate the applicable law.

Plaintiffs allege that Defendant Bedford County is liable under § 1983 because Sheriff Reichelderfer is a final policymaker with regard to employment decisions concerning deputy sheriffs. (Doc. No. 1 at ¶¶ 5-12; Doc. No. 24 at 17). In Pennsylvania, sheriffs exercise

18

significant autonomy with regard to the employment of deputy sheriffs. Under state law, the "sheriff of each county may appoint such deputies . . . as may be necessary to properly transact the business of his office." 16 Pa. Stat. Ann. § 1205. The appointments of deputy sheriffs are "revocable by the sheriff at pleasure." 16 Pa. Stat. Ann. § 1203; *see also* 16 P.S. § 1205 (The sheriff "may revoke the appointment of deputies in the same manner as his chief deputy."). Defendant Reichelderfer admitted that he has full and final discretion to discipline or fire a deputy sheriff whose conduct violates Sheriff's Office policies. (Doc. No. 26 at ¶ 17; Doc. No. 29 at ¶ 17); *see also Brennan v. Norton*, 350 F.3d 399, 428 (3d Cir. 2003).

Other courts in the Third Circuit presented with this issue have consistently concluded that county sheriffs are final policymakers with regard to employment decisions concerning deputy sheriffs. *See, e.g.*, *Cipilewski v. Szymanski*, No. 3:10-CV-2071, 2011 WL 1135163, at *3 (M.D. Pa. Mar. 25, 2011) ("Sheriff Szymanski was a final policy-maker under *Pembaur* and its progeny."); *McGovern v. City of Jersey City*, 98-5186, 2008 WL 58820 (D.N.J. Jan. 2, 2008) (noting that municipal liability existed against county for sheriff's acts because sheriff had final policymaking authority); *Morgan v Rossi*, No. 96-1536, 1998 WL 175604, at *11-12 (E.D. Pa. April 15, 1998) (concluding county sheriff was acting as final policymaker for the county and denying summary judgment for county).

Similarly, under the circumstances of the instant case, Sheriff Reichelderfer is among those officials "whose acts or edicts may fairly be said to represent official policy," *Monell*, 436 U.S. at 694, and whose decisions thus give rise to municipal liability under § 1983. *See Pembaur*, 475 U.S. at 1299. Accordingly, Defendant Bedford County's motion for summary judgment as to municipal liability should be denied.

19

## C. Qualified Immunity as to Defendant Reichelderfer

Defendant Reichelderfer asserts that he is entitled to qualified immunity as a matter of law because Plaintiffs "have not established that Reicheldorfer [sic] has violated any constitutional right or any statutory right." (Doc. No. 21 at 14-15).

"Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). To defeat an assertion of qualified immunity, a plaintiff must allege that the official violated a "clearly established right," which are those rights with "contours sufficiently clear that a reasonable official would understand that what he is doing violates that right." *McLaughlin v. Watson*, 271 F.3d 566, 570-71 (3d Cir. 2001). Accordingly, to determine whether Defendant Reichelderfer violated a clearly established right, the Court must (1) determine whether Plaintiffs have asserted a violation of a constitutional right, and, if so, (2) examine whether the right was "clearly established." *McLaughlin*, 271 F.3d at 571; *D.R. v. Middle Bucks Area Vocational Tech. Sch.*, 972 F.2d 1364, 1368 (3d Cir. 1992). The essential inquiry is whether a reasonable official in Defendant Reichelderfer's position at the relevant time "could have believed, in light of clearly established law, that [his or her] conduct comported with established legal standards." *McLaughlin*, 271 F.3d at 571 (citations omitted); *Andrews v. City of Phila.*, 895 F.2d 1469, 1479 (3d Cir. 1990).

Here, as explained above, Plaintiffs have asserted the violation of a constitutional right, namely that Defendants violated Plaintiffs' First and Fourteenth Amendments rights of speech and association. Thus, the first prong of the test is satisfied. Regarding the second prong of the test, Plaintiffs assert that, in *Burns v. Cnty. of Cambria, Pa.*, the Third Circuit concluded that the

20

same right asserted here by the Plaintiffs is "clearly established." *See Burns v. Cnty. of Cambria, Pa.*, 971 F.2d 1015, 1024 (3d Cir. 1992).

In *Burns*, the Third Circuit considered the precise question at issue here—"whether county officials have qualified immunity against claims by deputy sheriffs . . . who allege they were dismissed by the officials solely for their political activity in violation of their rights under the First Amendment." *Burns*, 971 F.2d at 1017. Like the instant case, the plaintiffs in *Burns* asserted that the "constitutional right of which a reasonable person would have known" was "the First Amendment's prohibition of the dismissal of public employees from their jobs solely because of their partisan political affiliation." *Id.* at 1021. In *Burns*, the defendants fired the plaintiffs because they had supported the newly elected sheriff's rival in an election. *Id.* at 1017-18. After reviewing the relevant cases and applying the pertinent test, the Third Circuit concluded:

> [T]he decisions of this court have been sufficiently consistent to have clearly established to all state and municipal employers that firing or other adverse employment action for political reasons contravenes the Constitution unless defendants could show that the particular position came within the narrow exception [of the *Branti-Elrod* cases]. We see no reason why any reasonable employer would have thought deputy sheriffs, whose work consisted of service process, transporting prisoners, and guarding courtrooms, could be fired for political reasons.

*Id.* at 1024.

In the instant case, Plaintiffs have alleged that Defendants violated the same right at issue in *Burns*. Thus, the right asserted by Plaintiffs is clearly established. In *Burns*, the Third Circuit rejected the same arguments that Defendants present here. *Burns*, 971 F.2d at 1022-23. As in *Burns*, the narrow exceptions articulated in *Elrod* and *Branti*, permitting an official to escape liability for political dismissals, are inapplicable in the instant case. *See Burns*, 971 F.2d at 1023; *see also Branti*, 445 U.S. at 515-16 ("[U]nless the government can demonstrate 'an overriding

interest,' 'of vital importance,' requiring that a person's private beliefs conform to those of the hiring authority, his beliefs cannot be the sole basis for depriving him of continued public employment.").

Accordingly, Defendants' claim that Defendant Reichelderfer is entitled to qualified immunity is without merit.

## VI. CONCLUSION

The parties present two very different scenarios concerning the reasons why Defendants fired Plaintiffs Stuby and Berkey. Plaintiffs, the nonmoving party, have provided sufficient evidence from which a reasonable jury could return a verdict in their favor. For the reasons explained above, the Court finds that Defendants have not met their burden of showing the absence of disputed material facts. Accordingly, because disputes of material fact exist, the Court will **DENY** Defendants' motion for summary judgment. An appropriate order follows.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| CHARLES E. STUBY and | ) |
| LUKAS J. BERKEY, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) CIVIL ACTION NO. 3:12-47 |
| v. | ) |
| | ) JUDGE KIM R. GIBSON |
| BEDFORD COUNTY and | ) |
| CHARWIN REICHELDERFER, | ) |
| *in his individual and official capacities*, | ) |
| | ) |
| Defendants. | ) |

## ORDER

**AND NOW**, this 21st day of October, 2013, in accordance with the foregoing
Memorandum, **IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment
(Doc. No. 20) is **DENIED**.

**BY THE COURT:**

**KIM R. GIBSON,**
**UNITED STATES DISTRICT JUDGE**